AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
**9/22/25**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MRV_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT

September 22, 2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CLD_____ DEPUTY

United States of America

v.

Gerardo Reyes,

Defendant

Case No.   2:25-mj-05840-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of September 4, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of firearm and ammunition |

This criminal complaint is based on these facts:

 *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Paulette Takora Michelle Taggart, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   September 22, 2025

*Judge's signature*

City and state:   Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
*Printed name and title*

AUSA: Rahul R.A. Hari (x 6159)

**AFFIDAVIT**

I, Paulette Takora Michelle Taggart, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, Gerardo REYES ("REYES") for a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and ammunition).

2.    The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

**BACKGROUND OF AFFIANT**

3.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2017.  I am currently assigned to the FBI's Los Angeles Field Office, Ventura Resident Agency.  I am empowered by United States law to conduct investigations of, and make arrests for, offenses enumerated in Title 18 and Title 21 of the United States Code.

4.    I have completed FBI training, executed numerous search warrants, and investigated criminal activity related to both national security and criminal matters.  I have received specialized training on the tactics, methods, techniques, and tradecraft of persons engaged in crimes related to these two categories of investigation.

5.    From 2017 to 2022, I was assigned to a counterintelligence squad where my primary responsibility was the investigation of matters involving foreign counterintelligence and counterproliferation.  Because of my assignment to a smaller sub-group of the FBI, my responsibilities also included assisting with criminal investigation into crimes involving gangs, violence, and violence against children.

6.    In 2022, I was reassigned to the Violent Crime Squad at the Ventura Resident Agency of the Los Angeles Division of the FBI, which investigates all violent crime.  I am currently assigned to the Ventura County Violent Gang Task Force which investigates violent criminal conduct related to firearms, narcotics, and violence in furtherance of criminal street gangs. In my current assignment, I work extensively with local, state, and federal partners.  I have participated in investigations of various crimes, including assault, murder, gang activity, crimes against children, narcotics, robbery, and firearms trafficking.

## SUMMARY OF PROBABLE CAUSE

7.    On September 4, 2025, Ventura County Sheriff's Office ("VCSO") deputies initiated a traffic stop on a car driven by

REYES for erasing, painting over, or altering his license plate's reflective coating, thereby preventing the ability to read or photograph the plate.

8.   During the traffic stop, REYES observed an open alcohol container in plain view and within REYES' reach in the driver's seat.  During a search of the car for more open containers, deputies found a firearm and a loaded magazine. REYES was placed under arrest.

<b><u>STATEMENT OF PROBABLE CAUSE</u></b>

9.   Based on my review of law enforcement reports and body-camera footage; conversations with other law enforcement agents; and my own knowledge of the investigation, I am aware of the following:

**A.   REYES is arrested with a firearm and ammunition.**

10.  On September 4, 2025, VCSO deputies were working uniformed patrol in the City of Camarillo, in the Central District of California.

11.  At approximately 8:00 p.m., Deputy Reyes of VCSO drove onto the lot of a 76-gas station located at 100 Las Posas Road. Deputy Reyes saw two people standing near the entrance to the gas station.  Once the two people noticed the deputy, they walked away from the entrance of the gas station, entered their cars, and began driving off the gas station property.  The first person, later identified as REYES, got into the driver's seat of a Chevrolet Silverado, license plate 8E84929.

12.  Deputy Reyes saw that the rear license plate of the Silverado had its reflective coating removed, making it nearly

non-visible in the dark.  Deputy Reyes began following REYES and eventually initiated a traffic stop for a violation of California Vehicle Code 5201.1(c), which prohibits erasing, painting over, or altering a license plate's reflective coating.

13. Initially Deputy Reyes believed the driver of the car was REYES's brother, A.R., who looks nearly identical to REYES and was previously known to Deputy Reyes.  Deputy Reyes conducted a records check on A.R. and learned that A.R. did not have a valid driver's license.  Deputy Reyes advised REYES that he had stopped REYES for having an altered license plate and for not having a driver's license.  REYES told Deputy Reyes that he did have a license and provided his California driver's license for inspection.

14. While speaking to REYES, Deputy Reyes saw that REYES was sweating, was wearing dark tinted sunglasses despite the time, and appeared to be extremely nervous.  Deputy Reyes asked REYES if he had had anything to drink or if he had used marijuana before driving.  REYES denied having done either.

15. Deputy Gil of VCSO responded to the traffic stop to assist with the Deputy Reyes's investigation.  While Deputy Reyes was speaking with REYES, Deputy Gil saw an open alcohol container, a can of Modelo beer, in plain view and within reach of REYES from the driver's seat.  The deputies saw that there was condensation on the open can of beer, indicating that it was still cold.  Deputy Reyes asked REYES again if he had any alcohol and REYES denied that he had.  Deputy Reyes then asked REYES to exit the car.

16. Deputy Reyes told REYES that the deputy was going to perform a sobriety check by performing a horizontal gaze nystagmus check.  Based on his training and experience, Deputy Reyes concluded from the check that REYES's physical response to the examination was consistent with someone having recently consumed alcohol.

17. The deputies asked REYES for consent to search his car, which he denied.  REYES said that the deputies were giving him a hard time because he had been released from prison approximately three years earlier.

18. Deputy Reyes advised REYES that it was unlawful to operate a car with an open container of alcohol and because it was in plain view, Deputy Gil was going to conduct a search of the car for additional containers of alcohol.  REYES indicated that he understood.  Almost immediately after beginning his search, Deputy Gil found a loaded firearm stuffed between the driver's seat and the center console of the car and a loaded spare magazine in the driver's side door-well of the car.  The recovered firearm is a black Beretta PX4 storm, serial number PX203793 and was found loaded with a magazine containing fourteen rounds of 9mm ammunition.  The second magazine found in the door-well was also loaded with fourteen rounds of 9mm ammunition.  Deputy Reyes inspected the ammunition and observed that the primers appeared to be in good working order and capable of being fired.

19. VCSO deputies also found an ice chest containing additional cans and bottles of beer.

20. REYES was placed under arrest.

**B.    REYES's Criminal History**

21. On September 18, 2025, I reviewed certified conviction records for REYES and learned that REYES was convicted of several felony crimes punishable by a term of imprisonment exceeding one year including, but not limited to:

a.    Conspiracy to commit a crime, in violation of 182(a)(1) in the Superior Court for the State of California, Ventura County, Case Number 2011038558, on or about June 13, 2011; and

b.    Conspiracy to commit a crime, in violation of 182(a)(1) in the Superior Court for the State of California, Ventura County, Case Number 2014021013, on or about April 13, 2013 – July 31, 2013.

22. REYES' criminal history shows that he was convicted of an additional four felonies while he was in state custody, each punishable by a term of imprisonment of more than a year.

23. I also learned from my review of REYES' criminal history that at the time of his arrest he was on bail for an alleged violation of California Penal Code 245(a)(1) (assault with a deadly weapon) and California Penal Code 182(a)(1) (conspiracy to commit a crime).  The charges remain pending in California Superior Court, Ventura County (Case Number 2025003244).

**C.    Interstate Nexus**

24. Based on my conversations with other law enforcement agents, I know that on September 16, 2025, an ATF Interstate

Nexus Expert reviewed photographs of the Beretta PX4 Storm 9mm Luger pistol bearing serial number PX203793 and 28 total rounds of ammunition including:

a. Nineteen rounds of 9mm Luger caliber ammunition with the headstamp markings, "WIN 9mm Luger," and

b. Nine rounds of 9mm Luger caliber ammunition with the headstamp markings, "STR 9x19mm 23."

25. The ATF expert concluded that the firearm was imported by Beretta USA Corp. in Accokeek, Maryland, and that the firearm and ammunition had been manufactured outside of the State of California. Because this firearm and ammunition were recovered in California, there is probable cause to believe that the firearm and ammunition moved in and affected interstate commerce.

//

//

## CONCLUSION

26. For all of the reasons described above, there is probable cause to believe that REYES has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

/s/
Paulette Takora Michelle Taggart
Special Agent, FBI

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 22nd day of
September, 2025.

HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE